UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WALTER L. MORRIS,

                              Petitioner,

-vs-                                                    Case No.  8:04-cv-2075-T-24TGW

JAMES V. CROSBY, JR.,

                              Respondent.
_____/

## **ORDER**

        This cause is before the Court on Petitioner Walter L. Morris' 28 U.S.C. § 2254

petition for writ of habeas corpus.  Morris challenges his conviction and sentence entered

by the Circuit Court for the Sixth Judicial Circuit, Pinellas County Florida.

SYNOPSIS OF FACTUAL BACKGROUND

        Kimberly and Timothy Ray Gee were the parents of Dustin Gee, the 33 month-old-

victim in this case.  Kimberly Gee admitted that she often physically abused Dustin as a

form of punishment.

        At the time of the crime, the three members of the Gee family lived in a one-

bedroom house with Walter L. Morris, Brooke Marie Anderson, who was Morris' significant

other,[1] and David Lee Morris, Morris and Anderson's infant son. The group lived as a family

unit and Morris assumed responsibilities for the group, including managing the money and

disciplining Dustin Gee.  The adults were allegedly minimally functional and minimally

retarded. At trial, Anderson testified that the group's financial problems and cramped

_____

[1] In the state court record, Anderson is also identified as Morris' fiancé and as his wife.

housing arrangement made everyone "very stressed" and "short tempered,"  and that Dustin reacted to this stress by being "whiney."  According to Anderson, Dustin had temper tantrums two or three times each day.  Morris often physically punished Dustin especially during the temper tantrums.

Kimberly Gee, who was also charged as a result of Dustin's murder, pled guilty to aggravated manslaughter of a child and was sentenced to 11.5 years incarceration.  She testified against Morris at Morris' trial.  She testified that on December 15, 1997, she and Dustin were in the kitchen and he "got in the drawer, and I slapped him, and he fell off his tricycle.  He fell and hit his head, and then he cried.  I looked him over and he was fine."

She testified that later, the group had dinner together and then watched television. Dustin walked in front of the television screen and cried.  Morris "yelled" at Dustin and Dustin cried.  Dustin walked in front of the television screen and cried again. Morris struck Dustin each time Dustin walked in front of the television screen.

According to Kimberly Gee, after Morris hit Dustin a number of times, Dustin "went limp."  Morris put Dustin in bed.  After two hours, Morris checked on Dustin and found that Dustin was having difficulty breathing.   Morris began CPR and told Anderson to call 911.

Anderson also testified at trial about the events of the evening just prior to Dustin's death.  She remembered that Morris threw his drink in Dustin's face because Dustin was having a temper tantrum and blocking the television set.  She testified that she and Timothy Gee, Dustin's father, restrained Dustin.  Morris poured "hot sauce" into Dustin's mouth. Then Morris placed his hand over Dustin's mouth, and when this action "was ineffective" he hit Dustin in the chest with his fist.  Dustin fell, striking his head.  Morris picked up

Dustin, shook him, slapped him in the face, and threw him across the room.  Dustin sat on the floor continuing to cry.  Anderson testified that Morris kicked Dustin in the chest and stomach, and Dustin cried.  She testified that Morris put his foot on Dustin's head and held him down, and that Kimberly Gee put Dustin to bed.  Anderson testified that she later checked on Dustin, who "looked like he was spitting stuff up."  She called 911 and Morris administered CPR.

Dustin Gee was hospitalized with "multiple blunt force trauma." Medical personnel determined there was no brain activity and Dustin was removed from life support on December 17, 1997. (See paragraphs 4 and 5 of Morris' Motion To Suppress which is Respondent's Exhibit 6; Appellate Briefs which are Respondent's Exhibits 11 and 12).

PROCEDURAL HISTORY

On January 13, 1998, in Case No. CRC97-22749CFANO, Morris was charged by Grand Jury indictment with one count of First Degree Murder, a capital offense. (Exhibit 1; V1; R 4-5).[2]  The indictment charged that Morris, while "engaged in the perpetration of, or in an attempt to perpetrate the crime of aggravated child abuse, did thereby inflict upon the said Dustin Gee, a human being, mortal wounds, and as a direct result thereof the said Dustin Gee died. . . "  The State sought the death penalty. (Exhibit 2; V1; R 7).

---

[2] Exhibits 1 through 15 were previously submitted to the court with the Response in Case No. 8:03-cv-1297-T-24TBM.  Those exhibits have been transferred to this case.  The record on appeal contains 51 volumes.  The original 22 volumes (designated "V") contain the pleadings, hearing transcripts, and other documents. The pertinent excerpts were provided in Respondent's response in this case as separate exhibits. Respondent provided the transcripts of the evidentiary portion of the trial, and the opening statements, which are contained in volumes 6 through 25 (designated "VS" followed by the number supplied by the court reporter in the upper right hand corner of the page.)

Morris' December 16, 1997 Interview with Police Detectives

Prior to Morris' interview, police questioned the three other adults in the household, each of whom identified Morris as the perpetrator of the crime.  (VS8; T 1104).  At the outset of Morris' interview,  police gave Morris the Miranda[3] warning.  At that time, Morris admitted that he did not know how to read or write. (V2  R 119).  In  response,  police read the Miranda warning to him, obtaining, after each sentence, Morris' affirmation that he understood the foregoing  statement.  (V2 R 119-120).[4]   The interview was videotaped.

During the interview, prior to the police detectives' mentioning Morris' son, Morris admitted numerous acts of abuse perpetrated on the victim,  including hitting/punching Dustin (V2; R 149); whipping/spanking Dustin (V2; R  140-141, 148); shaking Dustin (V2; R 141); stepping on Dustin (V2; R 146-147);  restraining  Dustin (V2 ;  R 143, 163); throwing water on Dustin (V2;  R 150);  throwing Dustin to the floor (V2; R 128, 142); and force-feeding Dustin Tabasco sauce  (V2;  R 151).  Throughout the interview, Morris also demonstrated the type and force of  discipline  he administered.  (V2; R 142, 149, 194, 210).

The police detectives told Morris that the Department of Children and Families ("DCF" formerly "HRS") had custody of his son, David Lee Morris.  (V2; R 165, 167, 172).  At trial, Morris' significant other, Brooke Anderson, testified that she was eligible to have

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

[4] The transcript of the interview is found in Respondent's Exhibit 7.

-4-

her son[5] returned to her, but chose to relinquish her parental rights. (VS10; T 1418-1421, 1435-36). During his interview with the detectives, Morris displayed a sophisticated use of language in re-characterizing the level of his abuse. (V2; R 147, 150, J.62, 167, 183, 192, 193). Throughout the interview, Morris characterized his abuse as parental-type discipline which "any parent" would use and which all of the other adults in the household, particularly Dustin's mother used. (V2; R 129, 130, 135, 138, 149 151, 152, 174, 213). In that way, he consistently placed the blame for the victim's injuries on the other members of the household, particularly the victim's mother. (V2; R 162, 217- 224).

Suppression Hearing

On June 28, 1999, Morris' trial counsel filed a motion to suppress Morris' inculpatory statements made during a December 16, 1997 interview with law enforcement officers. (Exhibit 6; V2; R 106-116). A transcript of the December 16, 1997, interview was attached to the motion to suppress. (Exhibit 7; V2; R 117-232). On March 20, 2000, the state trial court held a suppression hearing. The primary witness for the defense at the hearing was Dr. Richard Ofshe, who was qualified as an expert in police interrogation techniques. (Exhibit 8; V13-14; R 2020-2244).

On May 9, 2000, Judge Beach denied Morris' request to suppress, but partially granted Morris' motion to admit Dr. Ofshe's expert testimony.[6] (Exhibit 9; V3; R 368-369). The court made the following findings of fact and conclusions of law:

---

[5] The child was David Lee Morris. Walter Morris and Anderson raised the child as their son. However, Anderson acknowledged that the child may have been conceived with another man. Walter Morris was aware of this fact prior to establishing a long-term relationship with Anderson.

[6] Dr. Ofshe's trial testimony appears in the record at VS 24; T 3425-3521.

THIS CASE coming on to be heard upon the Defendant, Walter Lee Morris' motion to suppress his statement of December 16, 1997 as constitutionally inadmissible and not to be used against him in his trial for first degree murder or in the alternative, to admit expert testimony of Dr. Richard J. Ofshe , an expert in the field of influence and police interrogations, and the Court having read transcripts of Dr. Ofshe 's testimony and heard him testify, and having read the transcript of the Defendant's statement of December 16, 1997 and observed the video of the Defendant giving the statement on the same date and the Court having considered the argument of counsel and the legal citations cited, the Court finds and rules as follows:

I.  The Defendant's Statement of December 16, 1997.

(1) On December 16, 1997, the Defendant, Walter Lee Morris, was a male adult, in good health, of average intelligence, not suffering from any mental or physical disability.

(2) During the police interrogation of December 16, 1997, the police instructed the Defendant on his constitutional rights: that is, that he had a right to remain silent and that anything he said could and would be used against him; that at all times during the interrogation, he had a right to have an attorney present and if he couldn't afford an attorney, the Court would appoint one for him; and that he could waive these rights and make any statement he desired.

(3) The Defendant understood his constitutional rights.

(4) The Defendant voluntarily submitted to the police interrogation, which was vigorous but did not exceed permissible constitutional boundaries; was not coercive; did not overcome the Defendant's freewill, and the statement he made was freely and voluntarily given.

THEREFORE, it is the order of the Court the Defendant's statement of December 16, 1997 is admissible at his trial.

II.  The Expert Opinion of Dr. Richard J. Ofshe.

(1) Based on his education, research and experience, the Court finds that Dr. Richard J. Ofshe  is an expert in police interrogations.

(2) The Court adopts the ruling of Judge Lauren C. Laughlin on October 8, 1999 allowing Dr. Ofshe to testify to his observations and opinions of police interrogation techniques influencing statements of persons suspected of committing crimes. However, Dr. Ofshe  is not allowed to render

opinions as to the police interrogation techniques or the voluntariness of the Defendant's statement of December 16, 1997.

(Exhibit 9; May 9, 2000 Order).

## Jury Trial

A nineteen-day jury trial was held before the Honorable Robert E. Beach, state trial court judge, beginning May 15, 2000.  The jury found Morris guilty as charged. (Exhibit 3; V3; R 502).  The three-day penalty phase concluded July 24, 2000, with the jury recommending death by a vote or eight to four. (Exhibit 4;  V4;  R 518).  On February 15, 2001, the state trial court sentenced Morris to life in prison. (Exhibit 5; V6; R 965-985).

## Dr. Kenneth Varnadoe

During the third week of the guilt phase of the trial, the defense proffered Dr. Kenneth Varnadoe's testimony.  (Exhibit 10;  Excerpt of trial transcript at VS 24; T 3527-3551).  Morris sought to introduce psychological evidence of  the  results of  Intelligence Quotient  (I.Q.)  tests  conducted  by  the  Dr. Varnadoe  to  suggest  that  Morris' confession  was  involuntary.  After considering the proffered testimony and  argument of counsel,  the  state trial court denied the defense request to present Dr. Varnadoe's testimony to the jury:

THE   COURT: Okay. Well, I'm going to stick with my same ruling for these reasons: First of all, I think the tape itself is the best evidence of the voluntariness of this statement.

And, as a matter of fact, I've viewed this statement now twice, and it appeared to me that he handled himself quite well and stuck to his guns pretty much all the way through this statement, more so than I would find people with a high IQ would have done. He was pretty adamant in his statement, and he didn't deviate too much from it.  He did toward the end there.  But I think that's the best evidence before the jury to determine the voluntariness of that statement.

The other things that go into the consideration is that there is -- it is late being presented in so far as the State is concerned. But that is not a major consideration.

And thirdly, there's no testimony from this witness that his IQ impairment produced that statement that we all viewed. And, as a matter of fact, even by this witness' description, the force described by the Defendant was moderate, at best. And so that was self-serving to the Defendant, I would think.

And for those reasons, I'm not going to let it stick. I think the jury can best evaluate his voluntariness by actually viewing and listening to the tape. So that's my ruling.

(VS24; T 3538-3539).

Morris appealed.  He was represented by court-appointed Special Assistant Public

J.L. "Ray" LeGrande, who filed an initial brief (Exhibit 11) raising two issues:

ISSUE I

THE COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

ISSUE II

THE COURT ERRED IN EXCLUDING TESTIMONY OF DR. KENNETH VARNADOE RELATING TO APPELLANT'S I.Q. AND ITS EFFECT AS TO INTERROGATION.

On  December 11, 2002, in Case No. 2001-828, the state district court of appeal per

curiam affirmed the conviction and sentence.  (Exhibit 13).  Morris v. State, 835 So.2d 1130

(Fla.  2d DCA 2002) [Table].[7]

---

[7] On June 17, 2003, Morris filed a § 2254 habeas petition  in Case No.  8:03-cv-1297-T-24TBM.  He raised two grounds for relief: (1) confession illegally obtained by the use of  a coerced interrogation technique; (2) the state trial court erred  in excluding expert testimony.  The Respondent filed a response with  fifteen exhibits, including twenty volumes of trial transcript.  Morris filed a reply to the response.  Later, on November 21, 2003, Morris filed a motion to stay proceedings while  he returned to state court to exhaust his state remedies.  On  November 26, 2003, this Court issued an order denying the motion to stay, and dismissing the petition for writ of habeas corpus without  prejudice.

On September 26, 2003, Morris filed a <u>pro se</u> Rule 3.850 motion raising two grounds for relief.  (1) The State withheld  impeachment evidence favorable to Defendant;  (2) Defendant was denied effective assistance of counsel for failing to discover <u>Brady</u> evidence.  On December 17, 2003, the state trial court ordered the State to show cause why Morris should not be granted an evidentiary hearing on his claims.  (Exhibit 17).  The State filed its response, with record excerpts, on January 12, 2004.  (Exhibit 18).  On January 22, 2004, the state trial court summarily denied the Rule 3.850 motion in an order that reads, in pertinent part:

> This court initially suggested that Defendant's allegations regarding <u>Brady</u> and ineffective assistance claims may have been facially sufficient. <u>See Brady v. Marvland</u>, 373 U.S. 83 (1963). Upon further review of the record, Defendant's motion, and the State's response, it is clear that Defendant has not established a prima facie case. <u>See Freeman v. State</u>, 761 So.2d 1055, 1061 (Fla. 2000) ("The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden"); <u>Allen v. State</u>, 854 So. 2d 1255, 1258-59 (Fla. 2003) (To establish a <u>Brady</u> claim "[t]he defendant must allege specific facts that, if accepted as true, establish a prima facie case that (1) the State possessed evidence favorable to the accused because it was either exculpatory or impeaching; (2) the State willfully or inadvertently suppressed the evidence; and (3) the defendant was prejudiced").

> <u>Brady</u> Claim

> Defendant's allegations fail to satisfy each of the three (3) <u>Allen</u> requirements. <u>See</u> 854 So. 2d at 1258-59. This court will now address each of these three (3) in turn.

> (1).  Defendant repeatedly alleges that the State withheld impeachment evidence in regards to a witness who testified at trial, Kimberly Gee. However, other than a brief reference to Ms. Gee's abuse of her son, Defendant does not allege the content of these statements. He claims that these statements were inconsistent with "her prior testimony," but does not allege with what other statements they were inconsistent, nor does he allege how they were inconsistent.  Specifically, Defendant does not allege that the

allegedly withheld statements were inconsistent with Gee's testimony at trial or any other specific testimony.  Defendant's allegations are conclusory in nature and offer no specific facts to establish that the State possessed favorable impeachment evidence. See Allen, 854 So.2d at 1258-59. Without an allegation regarding such facts, this court cannot determine if the alleged information was favorable, or if in fact it was impeaching. Griffin v. State, 2003 WL 22207901, 28 Fla. L. Weekly S723 (Fla. September 25, 2003) ("Griffin's conclusory allegations were facially insufficient to allow the trial court to examine the specific allegations against the record").

(2).  Defendant alleges that the State withheld favorable impeachment evidence. Had Defendant specifically alleged what impeachment evidence was withheld by the State, this allegation may have constituted a facially sufficient claim as to the second Allen requirement. Cf. Allen, 854 So. 2d at 1259. As it stands, without a specific description of the alleged evidence, Defendant has not made a sufficient allegation that the State willfully or inadvertently withheld such evidence.

Inherent in this prong is whether Defendant alleges that he did not possess the alleged evidence or that he could not have obtained it through the exercise of due diligence. See Downs v. State, 740 So.2d 506, 513 (Fla. 2000) (Finding that to establish a claim that the State withheld evidence in violation of Brady, the defendant must establish that he does not possess the evidence nor could he obtain it himself with any reasonable diligence). In fact, Defendant admits in his own motion that the alleged impeachment information was revealed through a public records request that Defendant made to the State more than one year prior to trial. [fn 1] See Maharaj v. State, 778 So.2d 944, 954 (Fla. 2000) ("[A] Brady claim cannot stand if a defendant knew of the evidence allegedly withheld or had possession of it, simply because the evidence cannot then be found to have been withheld from the defendant"); Cf. Allen, 854 So.2d at 1259 (finding that a defendant is not required to compel production of exculpatory material). Therefore, to the extent that Defendant possessed the evidence he alleges the State suppressed, it cannot be found that the evidence was withheld.

> [fn 1] Defendant alleges he learned of the information in April of 1999. The jury returned a verdict of guilty on June 9, 2000 following a nineteen (19) day trial. (See EXHIBIT A - Judgment).

Even if Defendant's allegations can be considered to be facially sufficient as to this requirement, Defendant's claim certainly fails for the multitude of reasons described throughout this order.

(3). To determine if Defendant was prejudiced by the alleged withholding of evidence, this court must consider whether there is any reasonable probability that the outcome of the trial would have been different had the evidence not been suppressed. See Allen, 854 So. 2d at 1260. Similar to the evaluation of whether the alleged evidence was favorable, without alleging the content of the impeachment evidence it cannot be determined whether the suppression of such evidence would be prejudicial to Defendant. Additionally, the record conclusively refutes Defendant's claim that he was prejudiced by the alleged withholding of impeachment evidence because Kimberly Gee was thoroughly impeached at trial by Defendant's counsel.  Gee admitted under cross-examination before the jury to numerous instances of her horrific abuse of the victim, her young son. (See generally EXHIBIT B   Trial Transcript - Testimony of Kimberly Gee, T. 3-7, 92-179, 181-278.). Defendant's counsel used prior sworn statements on many occasions to impeach Kimberly Gee. See Transcript, T. 217-37, 253-54, 260-66. Gee also admitted to a great number of lies, in one instance specifically agreeing that she does not tell the truth, and in another, that she lies a lot and has a reputation of being a liar. See T. 242, 259-260. The jury was fully aware of Gee's credibility or lack thereof, as well as the fact that she abused her son.

Given the extraordinary number of examples of Kimberly Gee's lack of credibility that were brought out during cross-examination at trial, there is no reasonable probability that any more examples of inconsistencies not already disclosed to the defense, if they even exist, could have affected the outcome of the trial if they had been disclosed. See Allen, 854 So.2d at 1260. Defendant's allegations do not demonstrate prejudice as required to establish a Brady claim. See Guzman v. State, 2003 WL 22722404, 28 Fla. L. Weekly S829, "II. *Brady* Claim" (Fla. November 20, 2003) (Finding that there was no reasonable probability that the outcome of the trial would have been different if certain impeachment evidence had not been withheld where counsel thoroughly cross-examined the witness).

Ineffective Assistance

Defendant's next claim regards ineffective assistance of counsel on the grounds that counsel failed to investigate the allegedly undisclosed evidence. As the underlying Brady claim is without merit, there is no need to address the corresponding ineffective assistance claim. See Downs, 740 So.2d at 513, n. 10. Nevertheless, even if the Defendant had made a showing that his counsel's performance was deficient, the record clearly demonstrates the lack of prejudice under Strickland v. Washington, 466 U.S. 668 (1984). See Allen, 854 So.2d at 1261 (citing Strickland) ("To establish prejudice under Strickland, a 'defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' (citation omitted) 'Reasonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome' "); See also, Walton v. State, 847 So.2d 438, 455-56 (Fla. 2003) (" ... a court considering a claim of ineffectiveness of counsel 'need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied' "); See discussion of Kimberly Gee's credibility, supra. There is no reasonable probability that if counsel had acted differently in regard to the alleged inconsistent statements of Kimberly Gee that the outcome of the trial would have been different.  Additionally, Defendant's claims regarding statements of his counsel are conclusory in that he does not state when they occurred or where they might appear in the record.  There are at least thirty-two (32) volumes of trial transcript in this case and yet Defendant fails to cite to the location in the record where these alleged quotations of his counsel may be found. Finally, Defendant's motion lacks any allegation that, when he learned of the existence of this evidence in April of 1999, he passed along this knowledge to his trial counsel.

## Notice of Immunity

Defendant also raises the issue of whether the State should have notified that it had granted Kimberly Gee immunity in exchange for her testimony at trial against Defendant. This allegation is conclusively refuted by the record, where Gee repeatedly denied any "deal" with the State. See T. 6-7; (See EXHIBIT C  - Deposition of Kimbely Gee). The allegation  is also refuted by the fact that the State did not give Gee immunity and that she was prosecuted for aggravated manslaughter of a child and received a prison sentence of 11.5 years following her plea of no contest. (See EXHIBIT D - Judgment and Sentence for Kimberly Gee); See State's Response, p. 2.

## Conclusion

Given the motion's insufficient factual allegations, as well as the utter lack of prejudice demonstrated when Defendant's allegations are compared to the record, defendant's motion is denied. See Cabrera v. State, 721 So.2d 1190, 1191-92 (Fla. 2d DCA 1998) ("Alternatively, if the trial court's order is construed as finding Cabrera's factual allegations facially insufficient, then the court should have denied the motion on its merits rather than dismiss it on procedural grounds").

(Respondent's Exhibit 19 - - Order Denying Defendant's Motion for Postconviction Relief)

-12-

Morris filed a motion for rehearing (Exhibit 20), which was denied by the state trial court on March 5, 2004. (Exhibit 21). Morris appealed. On August 13, 2004, in Case No. 2D04-1509,  the state district court of appeal per curiam affirmed the order summarily denying the motion for postconviction relief. (Exhibit 22).

### State Habeas Corpus Petition

Simultaneous with the Rule 3.850 motion, Morris also filed a petition for writ of habeas corpus in the state district court of appeal alleging ineffective assistance of appellate counsel. (Exhibit 24).  Morris raised two claims of ineffectiveness: (1) appellate counsel  was  ineffective for  declining to challenge on direct appeal the trial court's exclusion of Dr. Joan Wood's proffered testimony; (2) appellate counsel was  ineffective in declining to challenge on direct appeal the trial court's  denial  of  Morris'  motion  to compel  inconsistent  statements from witness Kimberly Gee.

On April 29,  2004, in  case No. 2D03-4441, the state district court of appeal denied the petition, without discussion. (Exhibit  27).

### The Present Petition

Morris signed the present federal petition on September 8, 2004, raising four grounds for relief: (1) whether Morris' conviction was illegally obtained by the result of an involuntarily made confession;  (2) whether Morris was denied effective assistance of appellate counsel on direct appeal;  (3)  whether the State withheld evidence favorable to Morris in  violation  of  Brady v. Maryland,  373  U.S. 83  (1963);  whether  Morris  was denied effective  assistance  of  trial  counsel.

STANDARDS OF REVIEW

Because Morris filed his petition after April 24, 1996, this case is governed by 28

U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA).  Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d

880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of Corrections, 304 F.3d 1345, 1346

(11th Cir. 2002).  The AEDPA "establishes a more deferential standard of review of state

habeas judgments,"  Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to

"prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002); see, Bell v.

Cone, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating state-

court ruling is highly deferential, which demands that state-court decisions be given benefit

of the doubt)[citing 28 U.S.C.A. § 2254(d)]).   AEDPA is relevant to a review of this Petition.

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim

adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application, of clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Price v. Vincent, 123 S.Ct. 1848, 1852-53 (2003); Clark v. Crosby,

335 F.3d 1303, 1308 (11th Cir. 2003); Harrell v. Butterworth, 251 F.3d 926, 930 (11th Cir.

2001).   "Clearly established Federal law" is the governing legal principle, not the dicta, set

forth by the United States Supreme Court at the time the state court issues its decision.

Lockyer v. Andrade, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on

point, or the precedent is ambiguous, it cannot be said that  the state court's conclusion is contrary to clearly established governing federal law.  Mitchell v. Esparza, 124 S.Ct. 7, 10 (2003); Clark v. Crosby, 335 F.3d at 1308-10; Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  Mitchell v. Esparza, 124 S.Ct. at 10 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  See also Price v. Vincent, 123 S.Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75-77.  A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent.  Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell v. Esparza, 124 S.Ct. at 10; Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply.  Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).  The "unreasonable application" inquiry requires the state court decision to be more than

incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. at 791-792; Woodford v. Visciotti 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91. The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings. <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>McCullough v. Singletary</u>, 967 F.2d 530, 535-36 (11th Cir.1992). To the extent that a federal question is raised in the federal habeas petition, the federal question was not exhausted in state court if the issue were raised only as a state law claim in state court. <u>Anderson v. Harless</u>, 459 U.S. 4, 6-8 (1982).

Finally, in the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993). The test is "less onerous" then the harmless error standard enunciated in <u>Chapman v. California</u>, 386 U.S. 18 (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" <u>Brecht</u>, 507 U.S. at 637. Although no constitutional error has occurred in Morris's case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

A review of the record demonstrates that, for the following reasons, Morris' petition for writ of habeas corpus must be **DENIED**.

Ground One

Morris alleges that his confession was illegally obtained by the use of a coerced interrogation technique.  Morris contends that a veteran police detective, Frank  Puglia,

interrogated him  for more than two hours, threatening the loss of his son, David Lee Morris, and his unborn child by using a "family approach" technique.

Whether a confession is voluntary must be judged by the  totality of the circumstances. <u>Brewer v. Williams</u>, 430 U.S. 387, 402 (1977).  Although at trial the prosecution must establish that a challenged confession was voluntary, <u>see Lego v. Twomey</u>, 404 U.S. 477, 489 (1972), on collateral review, the burden of proving involuntariness rests with the habeas petitioner,  <u>see Martin v. Wainwright</u>, 770 F.2d 918, 925 (11th Cir. 1985), <u>modified by Martin  v. Wainwright</u>, 781 F.2d 185, <u>cert. denied</u>, 479 U.S. 909 (1986).  The test is whether Morris' "will [was] overborne and his  capacity for self-determination critically impaired." <u>Culombe v. Connecticut</u>, 367 U.S. 568, 602 (1961). Mental deficiencies or below average I.Q. of a defendant,[8] by themselves, are not sufficient to render a confession involuntary. To establish that his confession was involuntary, a petitioner must also establish  police coercion. <u>Moore v. Dugger</u>, 856 F.2d 129, 132 (11th Cir. 1988) (citing <u>Colorado v. Connelly</u>, 479 U.S. 157, 163-166 (1986)).

In the present case, the voluntariness issue was fully addressed by the state trial court after a hearing.  The state trial court, having viewed the  videotape of the police interview and heard the testimony of the defense expert, Dr. Ofshe, concluded that Morris' statements were given freely and voluntarily.  Specifically, the court made the  following factual findings:

> On December 16, 1997,  the Defendant, Walter Lee Morris, was a male adult, in good health, of average  intelligence, not suffering from any mental or physical disability.  During the police interrogation of December 16,

---

[8] Morris claims his I.Q. is 63.

1997, the police  instructed the Defendant on his constitutional rights: that is, that he had a right to remain silent and that anything he said could and would be used against him; that at all times during the  interrogation, he had a right to have an attorney present and if he couldn't afford an attorney, the Court would appoint one for him;  and that he could waive these rights and make any statement he  desired.  The Defendant understood his constitutional rights. The Defendant voluntarily submitted to the police interrogation, which was vigorous but did not exceed permissible constitutional boundaries; was not coercive; did not overcome the Defendant's free will, and the statement he made was freely and voluntarily given."

(Exhibit 9; May 9, 2000 Order).

Morris  argues  that  his confession was  involuntary and resulted from a coercive police interrogation technique known as the "family" motivator.  This approach involves threats relating to a suspect's loved ones.  At the suppression  hearing, Dr. Ofshe, who is an expert in the field of police interrogation techniques, discussed the family motivator and  testified generally about the coercive patterns he believed were  demonstrated during Morris' interrogation. Dr. Ofshe's testimony reveals that the trial court appropriately denied Morris' suppression motion.

Dr.Ofshe initially observed that the interrogation failed to produce a confession.  As Dr. Ofshe  testified, Morris, despite police urging, refused throughout the  interrogation to admit guilt for the severe injuries which resulted in Dustin's death.  Instead, Dr. Ofshe observed "marginal changes" in Morris' testimony regarding his involvement with Dustin's injuries.  This conclusion is borne out by the record.  Morris' position remained  virtually unchanged throughout the interrogation. He refused to accept responsibility for severely injuring the victim.  He continually identified the other family members as being equally or more culpable.  He reiterated that he  would never hurt Dustin and that he was only engaging in parental discipline.

-19-

Despite evidence to the contrary, Morris argues his will was overborne by eighteen separate references to the welfare of his son, David Lee Morris.  He claims that once the family motivator was introduced, he was compelled to confess what occurred.  He argues that  the family" motivator rendered his confession involuntary.  The state trial court correctly rejected this argument.

Morris did not confess to the acts which led to Dustin's death; the acts of abuse to which he did admit were revealed prior to introduction of the "family" technique  condemned by Morris.  Prior to the police raising the issue of his son, David Lee, Walter Morris had admitted nearly all of the acts for which he would ultimately take responsibility:  (1)  pouring Tabasco sauce down Dustin's throat; (2) hitting and punching Dustin; (3)  throwing Dustin to the floor; (4)  whipping/spanking Dustin;  (5) shaking Dustin;  (6) hitting Dustin with a belt; (7) placing his boot on Dustin's body; (8)  tethering Dustin to Dustin's  bed;  (9) losing his temper with  Dustin; (10) punishing Dustin "harder" than he intended; and (11) covering Dustin's  mouth. So,  even  though  Morris  made  admissions  of vigorous  parental discipline  during  the  interrogation, the admissions took place prior to and were not the result of the "family" motivator and did not amount to a confession of guilt. Rather, Morris maintained his innocence both before and after the introduction of statements regarding his son.  This sequence of events  supports the state trial court's finding that the interrogation did not  overcome Morris'  free will.

In the present case, Morris' crime was fatally injuring Dustin Gee, a child  living  in his  home  over  whom  he  exercised  parental  responsibility.  The other child in the home, David Lee Morris,  was considered at risk and was actually taken into protective custody

by the DCF. The detectives advised Morris that the truth was needed to determine Brooke Anderson's involvement with the abuse. They told Morris that her involvement would impact her ability to regain custody of David Lee Morris. The record reflects the truth of these statements. Brooke Anderson was not charged with any offense and DCF attempted to work with Brooke to reunite her with David Lee Morris. However, she declined to pursue reunification and elected to relinquish her parental rights.

In his brief on direct appeal, Morris sought to strengthen his "family" motivator argument by focusing on the "eighteen" allusions to Morris' family as evidence of intense coercion. However, Morris' own expert did not evaluate the existence of coercion by considering the number of times this motivator was used. Dr. Ofshe testified that the coercive strength of a motivating statement is not measured by the frequency of its use; the frequency of use is a measure of a defendant's resistance. Dr. Ofshe explained that the same motivator, in Morris' case, alleged threats to his family, did not gain strength by being repeated many times. Thus, the number of times Morris' son was mentioned is irrelevant. In fact, Dr. Ofshe identified only one instance in which any motivator appeared to have had a definite impact on Morris during the interview. Toward the end of the interrogation, the assistant detective, Detective Barrentine, asked Morris to describe the events of the night of Dustin's death. While Morris expressed doubt that such an exercise would improve his position, he ultimately complied. However, even during this compliance, Morris downplayed his role in Dustin's abuse and denied being the cause of Dustin's serious injuries. Thus, the family motivator was ultimately not successful in

soliciting a confession, or even any additional significant admissions of abuse, from Morris.

The totality of the circumstances reveals that Morris was not affected by police motivators. Nearly all of the facts elicited from Morris were admitted prior to any use of the "family" motivator, the primary motivator to which Morris objected.[9] No motivator, including the family motivator, compelled Morris to admit his role in inflicting the injuries that led to Dustin's death, and Morris was not coerced into giving an involuntary confession. Morris has not shown that his statements to police were involuntary and therefore he cannot meet the threshold requirements under the AEDPA standard of review.

Furthermore, the admission of any inculpatory statement made by Morris was harmless error. It is well-settled that the admission of an involuntary statement is subject to harmless-error analysis. Arizona v. Fulminante, 499 U.S. 279, 310-311 (1991). Because this is a 28 U.S.C. § 2254 habeas case, it is properly analyzed under the harmless error standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993): In order to require habeas relief, an error must have had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623. In light of the eyewitness testimony and the medical evidence, any error in admitting Morris' inculpatory statements was harmless.

Ground one does not warrant habeas corpus relief.

---

[9] Dr. Ofshe testified that police initially attempted to use a motivator which invites a defendant to claim that the abuse was accidental. The majority of Morris' admissions came about during the detectives' attempted use of this motivator. But, as Dr. Ofshe observed, the police were ineffective in applying this motivator because they did not obtain a confession. (Trial Tr., pp. 1499, 2083-88, 2090).

Ground Two

Morris alleges his appellate counsel was ineffective for failing to raise on direct appeal the issues that the state trial court erred by excluding certain cross-examination testimony of Dr. Joan Wood, and by denying Morris' motion to compel disclosure of Kimberly Gee's statements that were inconsistent with her prior testimony.  These two allegations were raised in Morris' state habeas corpus petition, and were rejected by the state district court of appeal.

In order to show a violation of the Sixth Amendment right to counsel, Morris must satisfy the two-pronged inquiry of Strickland v. Washington, 466 U.S. 668, 687 (1984). Therefore, Morris has the burden of showing both deficient performance and prejudice. The standard for ineffective assistance of appellate counsel on direct appeal is the same as for ineffective assistance at trial.  Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987).  There is no duty to raise issues on appeal which have little or no chances of success.  Thus, appellate counsel is not required to raise meritless issues, Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990), or issues that were not preserved and are procedurally barred on appeal. Bertolotti v. Dugger, 883 F.2d 1503, 1523 (11th Cir. 1989); Jackson v. Dugger, 931 F.2d 712, 715 (11th Cir. 1991).

Morris' first claim, that the state trial court erred by excluding certain cross-examination testimony of Dr. Joan Wood, the medical examiner who testified at Morris' trial, and that appellate counsel was ineffective for failing to raise this issue, has no merit. Prior to trial, the defense sought to cross-examine Dr. Wood regarding the details and outcomes of two other cases in which Dr. Wood's findings and conclusions were rejected.

-23-

(VS16   T   2189-2192).   In this way,   Morris sought to discredit Dr. Wood's testimony attributing Dustin's cause of death to the blows delivered by Morris.  The  State argued that an examination of Dr. Wood's other cases would raise collateral matters that  were inappropriate in Morris' case. (VS16; T 2186-2189, 2192).  In ruling for the State, the  state trial court specifically expressed its concern that an exploration the other cases identified by the defense was too collateral and would distract the jury from Morris' case. (VS16; T. 2191-92).

In the response to Morris' state habeas corpus petition, the State argued that the state trial court's evidentiary ruling on this issue was entitled to deference, absent an abuse of discretion, and that the state trial court did not abuse its discretion in refusing to allow testimony about Dr. Wood's other cases.  See Kelly v. State, 733 So. 2d 570 (Fla. 2d DCA 1999) ("We review a trial court's limitation of cross-examination under an abuse of discretion standard. [citation omitted]).  The State noted that a state trial court retains wide discretion to impose reasonable limits on cross-examination based on concerns about harassment, prejudice,  confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.  The State also argued that the sensational details of the two cases relied upon by the defense would have distracted the jury from Dr. Wood's evaluation of the evidence in Morris' case, and that a state trial court does not abuse its discretion by barring evidence on a collateral matter, "the probative value of which was outweighed by  the danger of confusing the issues and misleading the jury." See Cruse v. State, 588 So. 2d 983, 988  (Fla. 1992).  By denying the habeas petition, the state district court of appeal agreed that there was no abuse of discretion on the part of the state trial

court.   Because this claim had no merit, appellate counsel was not ineffective for failing to raise the claim on appeal.

In his second allegation of ineffective assistance of appellate counsel, Morris contends that appellate counsel should have raised the issue that the state trial court erred in denying his motion to compel inconsistent statements made by Kimberly Gee to Assistant State Attorneys Timothy Hessinger, Kendell S. Davidson and/or Scott Hopkins.

The State argued in its response to the state habeas petition that this challenge failed under the Strickland prejudice prong for two reasons.  First, the record at the time of trial reflected that Morris sought written statements that did not exist. Immediately prior to trial the defense became aware that, following several visits between the Assistant State Attorneys and Kimberly Gee, the State intended to call her as a witness.  The defense appealed to the court to have the State disclose the inconsistencies between Kimberly Gee's prior written statements and her recent disclosures to the State.  (VS1 T 7-12). The State responded that no written statements existed; thus the State had nothing to disclose. Id. Nevertheless, the State then disclosed generally that Kimberly Gee had retracted her earlier denials of specific facts of abuse.  The State denied having incident- by-incident details of inconsistencies to relate by memory to the defense. Id.

Moreover, the State pointed out that the state trial court afforded Morris a means of relief of which he did not appear to have taken advantage.  At the time the defense orally moved to obtain disclosure of the nature of Kimberly Gee's inconsistent statements, the state trial court ruled that the defense could depose Kimberly Gee and, if necessary, the Assistant State Attorney who represented the State prior to Kimberly Gee's testimony.

(VS1; T. 7-12). Thus, the defense was not prejudiced by the trial court's denial of Morris' motion to compel inconsistent statements made by Kimberly Gee to Timothy Hessinger, Kendell S. Davidson and/or Scott Hopkins.

Second, Morris was not prejudiced by the state trial court's order denying his motion to compel in light of Kimberly Gee's trial testimony. Kimberly Gee testified at length on direct and cross-examination as to numerous incidents of abuse and neglect she personally perpetrated on Dustin up until the evening of his death. (VS13; T. 1765-1776; VS13-14; T. 1757-2035). She admitted that she was a liar and untrustworthy, revealing specific instances of lying to police, other officials, and family friends. (VS13; T. 1775-76, 1875; VS14 T. 1948, 1981, 1988, 2029-2035). She specifically admitted to having previously lied about incidents about which other defense witnesses testified and admitted abuse consistent with those witnesses' testimony. (VS13-14; T. 1757-2035). Kimberly Gee's testimony painted her as a pathological liar and as not credible.

The State's redirect examination reflects that Kimberly Gee's testimony was inconsistent with her previous statements. Additional evidence on this point would have been cumulative and unnecessary. Accordingly, appellate counsel properly refrained from raising this issue on appeal. Morris fails to show there was a reasonable probability of success on appeal with regard to his proposed issues, and Morris' appellate counsel cannot be deemed ineffective for electing not to raise them. See Heath v. Jones, 941 F.2d 1126, 1132 (11th Cir. 1991).

Ground two does not warrant habeas corpus relief.

-26-

Ground Three

Morris alleges that the State committed a <u>Brady</u> violation by withholding evidence that could have been used in Morris' favor to impeach Kimberly Gee.  This claim has no merit.  Morris raised this claim in his Rule 3.850 motion in the state trial court.  The state trial court found that Morris' conclusory allegation, in which he listed no specific inconsistent statements  allegedly made by Kimberly Gee, was facially insufficient to state a  claim for relief.  In his Rule 3.850 motion, Morris did not allege the content of any statements, other than a brief  reference to Kimberly Gee's abuse of her son.  He claimed that these statements were  inconsistent with "her prior testimony," but did not point out the statements with which they were inconsistent, nor did he allege how  they  were inconsistent. Moreover, Morris did not allege specifically that the purportedly withheld statements  were  inconsistent with Kimberly Gee's testimony at trial or with any other testimony.  Accordingly, the state trial court determined that the allegations were conclusory and offered no specific facts to establish  that the State possessed favorable impeachment evidence.  This  ruling was reasonable under <u>Brady</u> and its progeny.  "A defendant  may not simply file a motion for postconviction relief containing conclusory allegations...and then expect to receive an evidentiary  hearing.  The defendant must allege  specific  facts  that, when  considering the totality of the circumstances, are not conclusively rebutted by the record..." <u>Allen v. State</u>, 854 So.2d 1255, 1258-59 (Fla. 2003) (quoting <u>Kennedy v. State</u>, 547 So.2d 912,  913  (Fla. 1989)).  Rather, in the context of a <u>Brady</u> claim, the defendant must allege <u>specific facts </u>that, if accepted as true, establish a  prima facie case that (1) the State possessed evidence favorable to  the accused because it was either exculpatory or

impeaching;  (2)  the State willfully or inadvertently suppressed the evidence; and  (3) the defendant was prejudiced. Strickler v. Greene, 527 U.S.  263, 281-82 (1999).

In addition, the state trial court found that Morris had not established that the evidence was not in the possession of the defense and could not have been obtained by using reasonable diligence.  On the contrary, Morris alleged in his postconviction motion that he learned of  the information in April 1999, prior  to commencement of his trial.

Moreover, even if Morris' Brady claim established a prima facie case of the withholding of impeachment evidence, the state  trial court reasonably rejected this claim on its merits.  To establish  a violation pursuant to Brady v. Marvland, 373 U.S. 83 (1967), the defendant must show that (1) the  prosecution suppressed evidence; (2) the evidence was favorable to  the defense, or exculpatory;  (3)  the evidence was not in the  possession of the defense and could not have been obtained by using  reasonable diligence; and (4) the evidence was material. Brady,  373 U.S. at 87; United States v. Meros, 866 F.2d 1304, 1308 (11th  Cir. 1989).  The Brady rule applies to both exculpatory as well as  impeaching evidence.  United States v. Bagley, 473 U.S. 667 (1985).  Favorable evidence is material only if there is a  reasonable probability that, had the evidence been disclosed to the defense,  the result of the proceeding would have been different.  Kyles  v. Whitley, 514 U.S. 419, 434 (1995) (citing Bagley, 473 U.S. at 682).  Showing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a  Brady violation,  without  more. Id. at  437.  A "reasonable  probability" is a probability sufficient to undermine confidence in  the outcome of the trial.  Id. at 434 (citing Baglev, 473 at 678).

In evaluating materiality, suppressed evidence must be considered collectively. Id. at 436; McMillian v. Johnson, 88 F.3d 1554, 1567 (11th Cir. 1996).

In Morris' case, the state trial court, after a thorough review of the record, concluded that Morris could not establish "materiality"; that is, he was not prejudiced by the alleged suppression of additional impeachment evidence. The state trial court pointed out in its order denying postconviction relief that the record conclusively refuted Morris' claim that he was prejudiced by the alleged withholding of impeachment evidence because Kimberly Gee was thoroughly impeached at trial. Kimberly Gee admitted under cross-examination, to numerous instances of her abuse of Dustin. (T. 3-7, 92-179, 181-278).[10]

Defense counsel used prior sworn statements on several occasions to impeach Kimberly Gee. (T. 217-37, 253-54, 260-66). Kimberly Gee also admitted to telling many lies, in one instance specifically agreeing that she does not tell the truth, and in another, that she lies a lot and has a reputation of being a liar. (T. 242, 259-260). Consequently, the jury was fully aware of Kimberly Gee's credibility, or lack thereof, as well as the fact that she abused her son. The absence of additional, cumulative impeachment evidence did not undermine confidence in the outcome of Morris' trial.

Ground three does not warrant relief.

---

[10] The relevant excerpts of Kimberly Gee's trial testimony are contained in the state trial court's order denying the motion for postconviction relief (Exhibit 19), as court's EXHIBIT B. The testimony in the original trial transcript is contained in Supplemental Volumes 13 and 14 of Respondent's Exhibit 15.

Ground Four

Morris contends his trial counsel was ineffective for failing to discover inconsistent statements made by Kimberly Gee to the State Attorney's Office, and failing to request the state trial court to conduct an in camera determination on whether the statements were favorable to Morris.  Morris is not entitled to relief on this claim because the state trial court's rejection of this claim was objectionably reasonable.

In order to show a violation of the Sixth Amendment right to counsel, Morris must satisfy the two-pronged inquiry of Strickland v. Washington, 466 U.S. 668, 687 (1984). Bell v.Cone, 535 U.S. 685, 698 (counsel failed to satisfy constitutional requirements at specific points).  First, Morris must demonstrate that the attorney's performance was deficient, meaning that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  Second, Morris must prove prejudice, in that he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  Morris must prove both prongs of Strickland. Therefore, if Morris fails to establish either deficient performance or prejudice, the court need not address the other prong. Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . .that course should be followed."); Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).  In Morris'

case, the state trial court's denial of Morris' ineffective assistance claim is not contrary to, nor an unreasonable application of, the <u>Strickland</u> standard. The state trial court correctly applied <u>Strickland</u> and concluded that in light of the determination that Morris was not prejudiced by the alleged withholding of impeachment evidence,[11] Morris' allegation that his counsel was ineffective for failing to discover any inconsistent statements by Kimberly Gee was also without merit. The state trial court had concluded, in reference to the <u>Brady</u> claim, that Kimberly Gee's credibility and trial testimony had been thoroughly impeached during cross-examination, and there was no reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Ground four does not warrant habeas relief.

Accordingly, the Court orders:

That Morris' petition is denied, with prejudice. The Clerk is directed to enter judgment against Morris and to close this case.

ORDERED at Tampa, Florida, on December 19, 2005.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Walter L. Morris

---

[11] This evidence was the alleged inconsistent statements of Kimberly Gee.

-31-